## Blakey et al. v. New York Life Insurance Company et al.

[No. 3,585.   Filed February 26, 1902.]

Appeal and Error.—*Evidence.*—*Weight.*—When the evidence is conflicting, and there is some evidence to support the verdict or finding, and the trial court has overruled a motion for a new trial asked because the verdict or decision is not sustained by sufficient evidence, such action of the trial court is conclusive upon the Appellate Court.

From Vanderburgh Superior Court; *J. H. Foster,* Judge.

Action by the New York Life Insurance Company to determine to whom it should pay the proceeds of an insurance policy. To such proceeding W. M. Blakey and J. E. Williamson intervened, claiming an equitable interest in the policy for attorney fees. From a judgment against them, they appeal. *Affirmed.*

*A. Gilchrist* and *C. A. DeBruler,* for appellants.
*L. J. Herman,* for appellees.

Wiley, J.—April 6, 1883, appellee insurance company issued to one William A. Johnston, a policy of insurance on his life, payable to himself, fifteen years after its date. Before its maturity he became indebted to Henry Macke, now

deceased, in the sum of about $3,000.   To secure the payment of said indebtedness, Johnston assigned to Macke said policy, and delivered the same to him.   Macke retained the possession of the policy until after its maturity.   The debt due him from Johnston remained unpaid.   Johnston also became indebted to one Ellen Rodwell, which indebtedness was reduced to a judgment.   Johnston became insolvent, and said judgment could not be collected.   The judgment plaintiff brought a proceeding supplementary to execution, and attempted to subject Johnston's equity in the insurance policy to the payment of her debt.   In this proceeding she suffered defeat, and upon appeal the judgment was affirmed.   *Rodwell* v. *Johnston*, 152 Ind. 525.   Susan Z. Johnston, wife of William A. Johnston also claimed an interest in the policy by assignment.   The policy was for $5,-000, and at its maturity was of the value of $6,611.65.

The insurance company being unable to determine to whom it should pay the money, and to protect its rights, brought an action against all the parties claiming an interest in the policy for the purpose of having the court adjudicate the conflicting interests.   To this proceeding Blakey and Williamson, the only appellants here, intervened, and asked to be made parties, claiming that they had an equitable interest in the proceeds of the policy.   They were admitted as parties and filed a cross-complaint in which they averred that Henry Macke, the assignee of said policy of insurance, was made a party to Rodwell's proceedings supplementary to execution, and that he employed appellants to represent him in that proceeding; that they did represent him and filed a cross-complaint for him in which they set up said assignment, and asserting that by reason thereof he held a first lien upon said policy and the funds arising therefrom for the payment of the indebtedness due to him from said Johnston.   In the cross-complaint it was averred that at the time of said employment it was agreed between Macke and appellants that the attorney's fees provided for

in said notes should be collected from said insurance funds as compensation for their services, and that by reason thereof they were entitled to an equitable assignment of the proceeds of said notes as should arise from the provision thereof concerning attorney's fees. In that proceeding, appellants were attorneys of record for the Johnstons, and conducted the litigation for them. In the proceeding brought by the insurance company, William A. and Susan Z. Johnston, Henry Macke and Ellen Rodwell were originally made parties. Susan Johnston, appeared by appellants as her counsel, and filed a cross-complaint setting up that she had an interest in the policy, under an assignment to her by her husband. To this proceeding Henry Macke appeared by Louis J. Herman his attorney and filed an answer asserting his interest in the policy by virtue of the assignment to him. He also appeared to the cross-complaint of appellants by the same attorney and filed an answer in denial.

The cause was submitted to the court and a finding made against appellants on their cross-complaint. It is not necessary to state the findings as to the other parties for they are not appealing. The appellants moved for a new trial on the ground that the decision of the court was contrary to law and not sustained by sufficient evidence. This motion was overruled, and such ruling is assigned as error. The sole question presented by the record and discussed by counsel is one of fact, and that question is, did Macke employ appellants to represent him as his counsel in the proceedings supplementary to execution, and agree with them that the attorney's fees provided for in the notes should be collected from the funds arising from the insurance policy as compensation for their services? If this inquiry can, from the record, be answered in the affirmative, then the decision of the court is not sustained by sufficient evidence. Such an agreement would carry with it an equitable assignment of the funds arising from the policy of insurance in favor

of appellants.    See, 1 Am. & Eng. Ency. of Law, (1st ed.) pp. 834, 968.

In the proceedings supplementary, to which Macke was a party, he was not at first represented by counsel, and his cross-complaint was filed after the action was partially tried. During the adjournment of court, at the noon hour, appellant Blakey sent for Macke to come to his office.    He went and there met both of the appellants.    Appellants wanted to see the notes which Macke held on Johnston and also the policy assigned to him, and requested that he bring them to Blakey's office.    Appellants were attorneys for Johnston in that proceeding.    Macke went to Blakey's office and took the notes and insurance policy as requested.    Appellants represented to him that he should appear to that proceeding and protect his interest.    He informed them that he did not want to go to the expense of "hiring a lawyer".    He, however, left the notes with Blakey that he might copy them. Appellants both testified that they explained to Macke that they would file a cross-complaint in that proceeding and protect his interests in that way.    The cross-complaint of Macke was filed May 17, 1897.    May 29, following, Macke appeared in court by Louis J. Herman as counsel and filed an affidavit to the effect that he had not employed appellants as his attorneys to represent him in that case; that he did not know that they were going to file a cross-complaint for him; that he repudiated their acts, and moved the court to strike the pleading from the files.    While there was no formal order of the court striking the cross-complaint of Macke from the files, no further notice was taken of it; appellants did not longer represent him; and the court made no order or finding relating to it.

The evidence of appellants is to the effect that Macke employed them in that case; and that they said to him that they would protect his interests by filing a cross-complaint, and that they would look to the fund arising from the policy for their fees as the notes provided for attorney's fees.

There is also evidence in the record strongly contradictory of the evidence of appellants on this point. After the policy matured the insurance company sent a representative to Evansville to adjust the matter and determine to whom it should pay the money. Before he went there, there was some correspondence between the representatives of the insurance company and appellant Williamson. In one of the letters written by Williamson he said: "When you come to Evansville come to see me, I have special reasons for this". When the representative of the company went to Evansville he did not at first call upon Mr. Williamson, but went to see Mr. Herman, Macke's attorney. When he did call upon Mr. Williamson he told him he had been to see Mr. Herman and Williamson exclaimed, "everything is off, why didn't you come to see me; you can take the first train back to Chicago". There is evidence tending strongly to show that Mr. Williamson desired for some reason to get the insurance company to settle with Macke for a sum very much less than the amount due. After his first conference with Mr. Williamson, Mr. Casey, representing the company, returned to his office with a statement showing that there was due Macke $3,675.71 and that this amount should be paid to him less $150 to be paid to Herman, his attorney. Williamson was at this time representing the Johnstons, and the adjustment of the Macke claim was made with him by telephone. When the agreement had been reduced to writing, Mr. Casey again went to Mr. Williamson's office. While there, Mr. Casey said to Mr. Williamson that Mr. Macke requested him to ask if any claim would be made for attorney's fees in the Rodwell case, to which he replied that he and Blakey would sign the agreement with the statement in it that they had no claim against Macke. The following day he refused to sign the agreement or permit his client to do so, but assigned other reasons than that relating to attorney's fees.

Mr. Macke on his examination in chief stated that he did

not employ appellants as his attorneys; that he did not authorize them to appear for him; and that he said to them he would not employ any attorneys except by written contract. There was also other evidence corroborating Macke upon this point. During the progress of the Rodwell trial, the judge in open court inquired of Macke if he desired to be represented by attorneys, and he replied that he did not. Macke was an old man, and on cross-examination, he made some statements that were somewhat contradictory of his assertion in his examination in chief that he did not employ appellants.

We have given a fair *resume* of all the material facts relating to the matter at issue, and it is upon these facts we are asked to reverse the decision of the trial court.

The court unquestionably found from the evidence that there were no contractual relations of client and attorneys between appellants and Macke in the Rodwell litigation, and that the appearance of the former as attorneys, and the filing of the cross-complaint were unauthorized. Before we can disturb such finding we must be able to say that there is no evidence in the record upon which to base the finding of the trial court. In addition to the facts we have stated, there is one pertinent matter that might be mentioned. In the Rodwell litigation it was a conceded fact that by the assignment of the policy to Macke he had a superior lien upon or claim to the policy. The policy had not then matured, and no attempt was being made to subordinate his interest in the policy to the claim or claims of any one else. Under these facts there was really no necessity of employing an attorney to protect his interests, and these are strongly corroborative of the other facts and circumstances in support of appellee's contention that he never employed appellants. The trial court evidently came to the conclusion, from all the evidence, that appellants were not employed by Macke as his attorneys, and we can not reverse this judgment without weighing the evidence

and becoming judges of it.  To do this would be violative of a fixed rule of law, to which there is no exception.

The preponderance of the evidence is a question for the jury or trial court, and when the evidence is conflicting, and there is some evidence to support the verdict or finding, and the trial court has overruled a motion for a new trial asked because the verdict or decision is not sustained by sufficient evidence, such action of the trial court is conclusive upon an appellate tribunal.  *Fox* v. *Cox*, 20 Ind. App. 61; *Bachman* v. *Cooper*, 20 Ind. App. 173.

Judgment affirmed.